UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BABAR JAVED BUTT,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 19-504 (JEB) |
| **UNITED STATES DEPARTMENT OF JUSTICE,** *et al.,* | |
| **Defendants.** | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Babar Javed Butt, who is awaiting deportation after his criminal conviction in the Southern District of Texas, made a multi-part request to Defendant Department of Justice under the Freedom of Information Act for records about himself to assist in his immigration proceedings.  After conducting an initial search that failed to produce any responsive records, Defendant Executive Office of United States Attorneys (a component of DOJ) renewed its efforts after receiving Butt's suit and eventually released 35 pages of material in full, while withholding 245 pages under various FOIA exemptions.

The parties have now filed Cross-Motions for Summary Judgment.  At issue are both the adequacy of the Government's search and the propriety of its exemptions.  The Court, satisfied with the more detailed supplemental declarations that the Government provides in its Reply, is persuaded that it conducted a mostly adequate search and properly applied FOIA exemptions in withholding documents.  The Court will thus award it summary judgment, with one minor exception.

## I.      Background

By a letter dated July 25, 2018, Plaintiff — who previously was convicted in the

Southern District of Texas, <u>see</u> ECF No. 1 (Complaint), ¶ 9 — submitted a FOIA request to

EOUSA.  <u>See</u> ECF No. 1-1 (July 25 FOIA Request); ECF No. 33-4 (Def. SMF), ¶ 1.  He

requested:

1. All emails, text messages, notes or any other form of digital or recorded, oral communication between Government prosecutors AUSA Heather Winter (SDTX), AUSA Mrs. Zahra Jivani Fenelon (SDTX), AUSA Miss Stephanie Bauman (SDTX), AUSA and my previous counsels Mr. Mervyn Mosbacker and Mr. Paul Schiffer that directly or indirectly discuss me in any way;

2. All emails, text messages, notes or any other form of digital or recorded, oral communication between Government prosecutors AUSA Heather Winter (SDTX), AUSA Mrs. Zahra Jivani Fenelon (SDTX), AUSA Miss Stephanie Bauman (SDTX), AUSA and AUSA Miss Elizabeth Karpati (SDTX) and United States Attorney Ryan Patrick that has my name or discuss me in any way;

3. All emails, text messages, notes or any other form of digital or recorded, oral communication between Government prosecutors AUSA Heather Winter (SDTX), AUSA Mrs. Zahra Jivani Fenelon (SDTX), AUSA Miss Stephanie Bauman (SDTX), AUSA Miss Elizabeth Karpati (SDTX) and United States Attorney Ryan Patrick that any employee of Department of Homeland Security, ICE, USCIS, HSI, Bureau of Prisons, and FBI that has my name or discuss me in any way;

4. All documents, emails, notes, text messages, files or minutes of conversations/meetings that discusses the assault on me by Paul Skinner's (HSI) supervisor on April 13, 2016;

5. All documents, emails, notes, or files, both digital and paper, that contains my name or refer to me in any way to the possession or knowledge of EOUSA or in the office of Government prosecutors of the Southern District of Texas;

6. All documents, emails, notes, text messages or files, that discuss the illegal seizure of $91,267 and 452 electronic devices that were seized from me by FBI agents on April 13,2016 and April 14, 2016 using consents obtained under duress, by assault and a fictitious warrant; [and]

7. All emails, files, text messages or records of any form of communication between Government prosecutors and from the Southern District of Texas and

> Immigration prosecutors in Dallas, Texas handling my removal proceedings
> that has my name or discuss me in any way.

July 25 FOIA Req.; Def. SMF, ¶ 1.  EOUSA conducted an initial search but inexplicably located no responsive records; it conveyed this to Butt in a November 15, 2018, letter.  See Def. SMF, ¶¶ 3–5; Compl., ¶ 9.  At the time Plaintiff filed this suit on February 25, 2019 — nearly six months after his initial request — he had yet to receive any records, notifications, or other communication from EOUSA or the Office of Information Policy.  See Compl., ¶ 13; see also 5 U.S.C. § 552(a)(6) (agency normally must make initial determination in 20 days, with another 20 days allotted for administrative appeal).

Apparently spurred into action, EOUSA renewed its efforts.  It directed the USAO-SDTX FOIA/Privacy Act staff to "conduct a new search for any documents responsive to Plaintiff's request."  Def. SMF, ¶ 9.  In addition, the AUSAs named in Butt's request were instructed to search for responsive materials.  Id., ¶ 10.  This search yielded 1,165 pages of records, which were processed and reviewed by EOUSA's FOIA Unit Staff.  Id., ¶¶ 13, 16.  That review determined that only "329 pages consisted of potentially responsive records," id., ¶ 15, 49 of which "required referral to other federal agencies for processing and to render disclosure determinations."  Id., ¶ 17.  After conducting its review of the "remaining 280 pages deemed responsive to Plaintiff's request," id., ¶ 24, on August 7, 2019, EOUSA "released 35 pages in full and withheld 245 pages in full pursuant to [FOIA] Exemptions 5, 6, and 7(C)."  Id.; see ECF No. 33-5 (Declaration of Ebony Griffin), ¶ 19.

Before Defendants' production, Plaintiff had moved for summary judgment, arguing that the Government had "fail[ed]" to provide an adequate response, as it had "offe[red] no plausible theory as to why not even a single record was located."  ECF No. 16 (Pl. MSJ) at 2.  After making its production, EOUSA cross-moved for summary judgment, contending with support

3

from declarations that it had conducted an adequate search and properly applied FOIA exemptions in withholding documents. <u>See</u> ECF No. 33-3 (Def. MSJ & Opp.) at 3, 4, 6, 8. Plaintiff then responded that the Government's declarations did not show that it had "made a good-faith effort to search and locate adequate responsive records," and further asserted that EOUSA had "misapplied exemptions to withhold documents." ECF No. 38 (Pl. Opp. & MSJ) at 1–2. Defendants' Reply adds supplemental declarations to bolster their position. <u>See</u> ECF No. 41 (Def. Reply & Opp.).

## II. Legal Standard

"When faced with cross-motions for summary judgment, th[e] [c]ourt must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" <u>Family Trust of Mass., Inc. v. United States</u>, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003)). If the court determines that one party is not entitled to summary judgment, it "changes tack on the cross motion and gives the unsuccessful movant 'all of the favorable factual inferences that it has just given to the movant's opponent.'" <u>Nucap Indus., Inc. v. Robert Bosch LLC</u>, 273 F. Supp. 3d 986, 998 (N.D. Ill. 2017) (quoting <u>R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150</u>, 335 F.3d 643, 647–48 (7th Cir. 2003)). "It is nonetheless still possible for a court to deny summary judgment to both sides." <u>Trudel v. SunTrust Bank</u>, 288 F. Supp. 3d 239, 245 (D.D.C. 2018).

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("Only disputes over facts that

4

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  "In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party."  Coss v. DOJ, 133 F. Supp. 3d 1, 3 (D.D.C. 2015) (citing Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006)).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. DOJ, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

## III.   Analysis

As in most FOIA cases, the twin disputes here revolve around the adequacy of the Government's search and the propriety of its withholdings.  The Court will examine each topic separately, after first dispatching a threshold procedural matter.

Defendants correctly point out that Butt has not complied with Local Rule 7(h), which requires a summary-judgment movant to submit a separate statement of undisputed material facts with citations to supporting parts of the record.  See Def. Reply & Opp. at 1–3.  This deficiency

alone could warrant a denial of Plaintiff's Motion.  The procedure contemplated by Local Rule 7(h) is not an empty formality.  It serves a critical function by helping to "crystallize for the district court the material facts and relevant portions of the record," instead of forcing the court to waste efforts "sift[ing] and sort[ing] through the record" itself.  Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151, 153 (D.C. Cir. 1996) (interpreting predecessor rule to LCvR 7(h)(1)).

This shortcoming is less pronounced in a typical FOIA case, where there is no dispute over the facts, which are usually known only to the Government.  In addition, we are dealing with a *pro se* Plaintiff, whose court filings are to be "liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Finally, the Court need not rest its judgment on Plaintiff's procedural shortcomings, for his Motion falters — and Defendants' succeeds — on independent grounds. The Court therefore proceeds to the merits.

A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id.  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent

contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

To demonstrate the adequacy of its search here, EOUSA offers declarations by Ebony Griffin, Attorney-Advisor with FOIA/PA staff at EOUSA, and Ninfa Salazar, FOIA Supervisor Paralegal Specialist for the USAO-SDTX.  See Griffin Decl.; ECF No. 40-2 (Supplemental Declaration of Ebony Griffin); ECF No. 33-8 (Declaration of Ninfa Salazar); ECF No. 40-1 (Supplemental Declaration of Ninfa Salazar).  Plaintiff attacks deficiencies in the Government's initial declarations, asserting that they "do not satisfy the relatively detailed and nonconclusory standard implemented in this District" to show that a search was adequate.  See Pl. Opp. & MSJ at 3.  In support of this position, he alleges several infirmities in the Government's search process and scope.  Id. at 3–6.  The Court considers each of Plaintiff's arguments in turn, but notes that, as a general matter, the Government's supplemental declarations remedy almost every shortcoming that Butt points out in the declarations Defendants originally provided.  Compare Salazar Suppl. Decl., and Griffin Suppl. Decl., with Salazar Decl., and Griffin Decl.

1.  *Specificity in Describing Search Process*

Butt first argues that the Government has not shown that its search was adequate because its original declarations did not provide enough specificity regarding "what search terms and what search methods were utilized by the USAO-SDTX and the AUSAs, which electronic/digital files and folders were searched and by who, which manual files and folders were searched and by who and . . . what each search specifically yielded."  Pl. Opp. & MSJ at 3–4.

Salazar's Supplemental Declaration, however, provides a detailed account of her own search, as well as those of the AUSAs.  She explains that she searched Butt's case file and "all

manual and computer systems for responsive documents."  Salazar Suppl. Decl., ¶ 9.  She began

by searching CaseView (USAO/SDTX's "computerized docketing case management system")

using the terms "'Babar Butt,' 'Babar Javed Butt,' [and] 'Javed Butt,'" as well as the docket

number for Plaintiff's criminal case.  Id., ¶ 10.  After the CaseView search yielded no results,

Salazar then conducted a "manual[] search[] [of] the SDTX Public Access Court Electronic

Records ('PACER') database," "a system that provides case and docket information for federal,

and Appellate court cases," using the same search terms.  Id., ¶ 11.  That search produced "131

docket entries which consisted mostly of Sealed Court filings."  Id.

Salazar also explains that each AUSA "manually searched her computer Outlook

database system for any and all electronic/digital records," identifies the terms used in those

searches, and asserts that the prosecutors made a "good faith effort in conducting their searches."

Id., ¶¶ 13–17.  Additionally, Griffin notes that "USAO-SDTX provided directives specifically to

those attorneys mentioned in . . . Plaintiff's FOIA request[,] [and they] performed a manual

search for all electronic / digital records using the search terms of Plaintiff's name 'Babar Javed

Butt' and variations thereof."  Griffin Suppl. Decl., ¶ 6.

Because EOUSA's supplemental declarations describe "with particularity the files that

were searched, the manner in which they were searched, and the results of the search," Steinberg,

23 F.3d at 552, and identify search terms used, the Court is satisfied that Defendants have

provided a reasonably specific account of the scope and method of their search.

### 2.  *Personal Involvement of Declarants*

Butt next asserts that the Griffin Declaration should "be afforded no weight because [she]

was never personally involved in overseeing the adequacy of the search but instead simply

ensured 'that the records were processed properly.'"  Pl. Opp. & MSJ at 4 (quoting Griffin Decl.,

¶ 17).  He claims that similar deficiencies afflict the Salazar Declaration, arguing that it "shows that she herself did not supervise the search nor did she conduct any search of her own . . . [and that] [i]nstead, her role was limited to simply uploading the documents provided to her by the AUSAs into the FOIA system."  Id. at 4.

As detailed above, however, Salazar provides a specific account of her first-hand role in the search in her Supplemental Declaration.  See Salazar Suppl. Decl., ¶¶ 9–11.  Additionally, the Supplemental Griffin Declaration explains her role, in that she was responsible for reviewing the records to ensure that they "were processed properly" and "conduct[ing] a detailed, line-by-line review of the responsive records."  Id., ¶¶ 10, 20.

As Butt himself acknowledges, "[T]here is no need for an agency to supply affidavits from each individual who participated in the actual search."  Pl. Opp. & MSJ at 4 n.3.  It may instead submit an affidavit from an employee who had "some personal involvement in supervising the [FOIA] search."  Id. (emphasis added).  Given that both Salazar and Griffin detailed their direct roles in processing Plaintiff's request, and because they both are knowledgeable about EOUSA's handling of FOIA requests, see Salazar Suppl. Decl., ¶¶ 4–8; Griffin Suppl. Decl., ¶¶ 2–3, the Court concludes that the Government has more than met its burden to produce declarations from individuals who are knowledgeable about the search process and this request.  See Wisdom v. U.S. Trustee Program, 266 F. Supp. 3d 93, 103 (D.D.C. 2017) ("FOIA affidavits can be based on hearsay, and there is no requirement that the declarant must have been personally involved in each of the challenged searches[,] . . . [and] [i]t is sufficient for a FOIA declarant to 'attest to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'") (fifth alteration in original)

(quoting Madison Mech., Inc. v. Nat'l Aeronautics & Space Admin., No. 99-2854, 2003 WL 1477014, at *6 (D.D.C. Mar. 20, 2003)).

### 3. *Exclusion of Ryan Patrick*

Moving right along, Butt next challenges the search's adequacy by arguing that Salazar "fails to explain why [she] excluded US Attorney Mr. Ryan Patrick when seeking" responsive records, "despite Plaintiff mentioning him in his FOIA request."  Pl. Opp. & MSJ at 4.  In her Supplemental Declaration, Salazar explains that Patrick did not search his records because it is "[s]tandard practice . . . to exclude the U.S. Attorney from responding to FOIA request[s] as the U.S. Attorney's records would be exempt" as attorney work product under FOIA Exemption (B)(5)."  Salazar Suppl. Decl., ¶ 19.  In any event, she points out that "[a]t the time [Butt] was indicted, . . . Patrick was not the U.S. Attorney" and therefore "would not have responsive records to Babar Butt."  Id.

The Government's reasoning on this point is dubious at best.  First, the adequacy of a search and the application of FOIA exemptions are two separate issues; an agency cannot refuse to search a certain location just because that search could uncover materials that may fall under a privilege.  Second, while Patrick was not U.S. Attorney when Plaintiff was indicted in 2016, Butt's criminal case obviously continued after that time, as it was not closed until April 2020. See United States v. Butt, Crim. A. No. 16-452 (S.D. Tex. filed Oct. 5, 2016); see also *Meet the U.S. Attorney, Ryan K. Patrick, United States Attorney, Southern District of Texas*, U.S. Department of Justice, https://www.justice.gov/usao-sdtx/meet-us-attorney (last updated July 14, 2020) ("Patrick began serving as U.S. Attorney on Jan. 8, 2018.").  Indeed, Defendants make it a point to emphasize that Plaintiff's notice of appeal was not even filed until January 11, 2018. See Def. Reply & Opp. at 13; Butt, Crim. A. No. 16-452.

10

As the Government's explanation for Patrick's exclusion is thus unsatisfactory,

Defendants must either search his physical and digital records for potentially responsive

materials or offer a declaration better explaining why they need not do so.

### 4.  *Search Strategy after Litigation*

Butt also raises issues with the initial Salazar Declaration, arguing that it "failed to

identify . . . what new search methods and strategies she along with other AUSAs implemented

. . . to ensure that all responsive records were uncovered" after Plaintiff filed suit.  See Pl. Opp.

& MSJ at 4.  EOUSA contends that "[t]his argument is irrelevant," since it has already made its

production.  See Def. Reply & Opp. at 8.

While it is surprising that EOUSA located responsive records only after Butt filed this

suit, the Government is correct here.  See Perry, 684 F.2d at 125 ("[H]owever fitful or delayed

the release of information under the FOIA may be, once all requested records are surrendered,

federal courts have no further statutory function to perform."); see also Sanders v. Obama, 729 F.

Supp. 2d 148, 154 (D.D.C. 2010) ("Pursuant to the remedial powers of FOIA, a district court

may only order the production of agency records, nothing more.").  The Court, therefore, cannot

find Defendants' search inadequate on this basis.

### 5.  *Exhaustive and Good-Faith Search Effort*

Butt further argues that neither declarant initially "averred . . . that all files and folders

likely to contain responsive materials were searched and all AUSAs made a good faith effort to

uncover all responsive records."  Pl. Opp. & MSJ at 5.  It is true that courts often require these

"magic words" to find a search sufficient.  See Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68

(D.C. Cir. 1990).  Yet, much like the challenges addressed above, this argument is a non-issue in

light of Defendants' supplemental declarations.  Griffin identifies certain record systems that

11

were searched, and she adds that "[t]here are no other records systems or locations within the [SDTX] in which other files pertaining to the Plaintiff were maintained," Griffin Suppl. Decl., ¶ 8, and Salazar asserts that each AUSA made a "good faith effort in conducting their searches." Salazar Suppl. Decl., ¶ 17.

### 6.  *Exclusion of Non-Email Materials*

Butt also posits that Defendants "knowingly failed to give due weight to . . . items requested in Plaintiff's FOIA" and only "<u>partially</u> address[ed] . . . Plaintiff's FOIA request." Pl. Opp. & MSJ at 5.  In particular, Butt questions why, out of the 1,165 pages of documents yielded by the search, the Government deemed 122 pages non-responsive because they "were not emails," Griffin Decl., ¶ 16, where his request covered more than just emails.  <u>See</u> July 25 FOIA Req.

In her Supplemental Declaration, Griffin explains that she reviewed the materials excluded by EOUSA — including the 122 pages at issue — and determined that the exclusion was proper because the "documents . . . were not related to the . . . request and included documents such as blank pages, filed Appeal Court documents, and documents between the personnel staff that were not related to the plaintiff."  Griffin Suppl. Decl., ¶ 11.

While EOUSA's first explanation for deeming these 122 pages non-responsive is puzzling given the scope of Butt's request, the Court is satisfied that its subsequent one justifies this determination.

### 7.  *Exclusion of Mervyn Mosbacker*

Butt further challenges the adequacy of the search by pointing out that the Government's declarations "make[] no mention of [Plaintiff's previous counsel] Mr. Mervyn Mosbacker."  Pl. Opp. & MSJ at 6.  This, he concludes, shows "that the AUSAs identified . . . never even searched

for any correspondence between them and Mr. Mosbacker." Id.  The Supplemental Salazar

Declaration renders this objection immaterial, however, by "confirm[ing] that USAO-SDTX

staff's search parameters included Mr. Mosbacker."  Def. Reply & Opp. at 9; see Salazar Suppl.

Decl., ¶¶ 13–14, 17 (explaining that AUSAs used "Mosbacker" and "Mervin Mosbacker" as

search terms).

### 8.  *Failure to Search for All Emails*

Butt next contends that "Defendants are knowingly and willingly in bad faith not

disclosing multiple emails between AUSA Heather Winter, AUSA Zahra Jivani [Fenelon] and

[his previous counsel] Mr. Paul Schiffer which discuss" certain aspects of his criminal case.  See

Pl. Opp. & MSJ at 6.  He argues that this assertion is "true in light of the fact that neither [of the

Government's declarants] aver[s] on behalf of the AUSAs identified . . . that when reviewing for

potentially responsive emails they searched their entire outlook and released all responsive

records."  Id. (emphasis added).

The Court begins by noting that Butt does not offer evidence to support his assertion that

Defendants are withholding said materials, which, as the Government points out, is "pure

conjecture and 'insufficient to justify a finding that the search was inadequate.'"  Def. Reply &

Opp. at 9 (quoting Media Research Ctr. v. DOJ, 818 F. Supp. 2d 131, 138 (D.D.C. 2011)).

Salazar's Supplemental Declaration, moreover, avers that each AUSA "manually

searched her computer Outlook database system for any and all electronic/digital records" using

various relevant search terms, see Salazar Suppl. Decl., ¶ 13 (emphasis added), and that AUSA

Heather Winter "manually searched her physical file," id., which yielded documents including

"emails between [the AUSAs] . . . and Paul Schiffer."  Id., ¶ 17.  Salazar also asserts that all

AUSAs made a "good faith effort in conducting their searches."  Id.; see also Salazar Decl., ¶ 10

(averring that the search "included emails between the AUSAs mentioned in this declaration and correspondence relative to FBI agents and attorney Paul Schiffer").

There is simply no evidence to support the assertion that EOUSA is in bad faith withholding any materials, particularly because the Government's supplemental declarations make it clear that the AUSAs identified by Plaintiff comprehensively searched their records and produced documents responsive to this part of his request. As a reminder, such declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). The Court is thus unpersuaded by Plaintiff's argument.

### 9. *Failure to Address Parts of Plaintiff's Request*

Finally reaching the end of the line, Butt challenges the adequacy of the Government's search on the ground that EOUSA did not make "any meaningful attempt to address bullet point #7," as well as "other bullet points of [his] FOIA request." Pl. Opp. & MSJ at 6. He supports this assertion by pointing out that Defendants' Vaughn Index "entirely consists of documents dated beginning of 2017," whereas the Government "would have easily generated responsive records as early as . . . 2016" had it made efforts to respond to all parts of his request. Id. Butt, however, provides no evidence to substantiate this assertion. Defendants characterize this as a "speculative claim[] about the existence and discoverability of other documents," Def. Reply & Opp. at 10, which they reason cannot rebut declarations stating that the Government "searched for and identified 'all records' responsive to Plaintiff's request." Id. at 11 (quoting Def. SMF, ¶ 11).

Indeed, the Salazar Declaration asserts that she searched for records responsive to "questions #1-7 of Plaintiff's request." Salazar Decl., ¶ 9 (emphasis added). Both supplemental declarations, moreover, explain that the search was exhaustive. Salazar stated that she was "not aware of any other method or means by which a further search . . . would likely uncover additional responsive records," Salazar Suppl. Decl., ¶ 21, while Griffin asserted that "[t]here are no other records systems or locations within the [SDTX] in which other files pertaining to the Plaintiff were maintained." Griffin Suppl. Decl., ¶ 8. The Government argues that "[t]hese averments are sufficient to show that USAO-SDTX staff 'searched for records based on the scope of Plaintiff's FOIA request.'" Def. Reply & Opp. at 10 (citation omitted).

Additionally, as explained above, Salazar avers that each Government prosecutor searched for a number of terms, including Plaintiff's name. See Salazar Suppl. Decl., ¶¶ 13–17. Such searches would seem reasonably calculated to produce documents responsive to bullet #7 of Butt's request, which asked for "communication between Government prosecutors from the Southern District of Texas and Immigration prosecutors in Dallas, Texas handling [his] removal proceedings that ha[d] [his] name or discuss[ed] [him] in any way." July 25 FOIA Req., ¶ 7.

Given that the Government's declarations — which, as noted above, are afforded a presumption of good faith that cannot be rebutted by speculation — assert that its search was exhaustive and calculated to uncover materials responsive to all parts of Plaintiff's requests (including bullet #7), see Salazar Suppl. Decl., ¶ 9, the Court once again is not convinced by Plaintiff's unsubstantiated claims that Defendants neglected to address certain parts. See SafeCard Servs., 926 F.2d at 1202 (finding that agency conducted adequate search after "[h]aving taken all of the steps within its power to retrieve the files" requested); Oglesby, 920 F.2d at 68 ("In order to obtain summary judgment the agency must show that it made a good

15

faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); Perry, 684 F.2d at 128 ("The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.").

Those keeping score will note at this point that the Court has been persuaded by only one challenge that Butt levels against the adequacy of the Government's search.  While its initial declarations may not have been specific enough to demonstrate that it conducted an adequate search, it subsequently provided detailed supplemental declarations.  The Court is satisfied that the latter demonstrate that EOUSA's search was adequate, with the minor exception discussed in Section III.A.3, *supra*.

    B.  Exemptions

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  In other words, under Exemption 5, an agency may withhold from a FOIA requester any "documents[] normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).  This exemption encompasses three distinct categories of information: deliberative-process privilege, attorney-work-product privilege, and attorney-client privilege. See Am. Immigr. Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).

EOUSA claims that the withheld documents are covered under both the work-product and the deliberative-process privilege.  As will soon become clear, the former is sufficient to justify withholding all 245 pages.  The Court's analysis, accordingly, starts and ends there.

"The attorney work-product [privilege] protects 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney."  Id. at 221 (quoting Fed. R. Civ. P. 26(b)(3)).  As this Court has noted in the past, this privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable" even if not necessarily imminent.  Id.  The privilege, however, is not boundless.  No doubt potential "future litigation touches virtually any object of a[n agency] attorney's attention," but "if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'"  Senate of the Commonwealth of Puerto Rico v. DOJ, 823 F.2d 574, 586–87 (D.C. Cir. 1987) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)).

When reviewing a withholding under the work-product privilege, the D.C. Circuit employs a because-of test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  FTC v. Boehringer Ingelheim Pharms., Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)).  Here, this means that EOUSA must at least demonstrate that the lawyer who prepared these documents possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998).  For the Government to discharge its evidentiary burden under this standard, it generally must provide a description of the nature and contents of the withheld document — which typically includes the document's author and the circumstances surrounding its creation — and provide some indication of the type of litigation for which the document's use is at least foreseeable.  See Ellis v. DOJ, 110 F. Supp. 3d 99, 108 (D.D.C. 2015).

17

In addition to the two declarations from Ebony Griffin, Defendant provides a <u>Vaughn</u> Index, <u>see</u> ECF No. 33-16, to support its assertion that it has "satisfie[d] the threshold requirement for invoking Exemption Five." Def. MSJ & Opp. at 5. In its initial review of the <u>Vaughn</u> Index, however, the Court found the Government's explanation for withholding documents 00108-00112 and 00235-00240 too vague and ordered EOUSA to produce those records for *in camera* inspection. <u>See, e.g.</u>, <u>Vaughn</u> Index, Docs. 00108-00112 (describing "Emails between uscourts.gov and AUSA and emails between AUSAs regarding response to discovery motion"), Docs. 00235-00240 (describing "Emails between several government attorneys related to compliance and service"); <u>see also</u> Minute Order (7-23-2019). The Court has reviewed those materials and now addresses the substantive issue: whether all documents constitute FOIA-exempt attorney work product. The answer is yes.

The Government withheld two categories of documents pursuant to the work-product privilege: "internal office documents and trial related materials, prepared in aid of litigation" and external "e-mail discussions between . . . government attorneys and law enforcement agency personnel." Def. MSJ & Opp. at 5. The Court considers each category in turn.

       1. *Internal Documents*

The Government explains that it withheld certain documents that were "intended solely for use by the prosecutors within the U.S. Attorney's Office for the Southern District of Texas." <u>Id.</u> More specifically, these records detail the legal strategies, thoughts, and impressions of the attorneys assigned to investigate and prosecute Plaintiff. <u>See</u> <u>Vaughn</u> Index at ECF p. 2; Griffin Decl., ¶ 24; <u>see also</u> <u>Vaughn</u> Index, Docs. 00001-00057, 00062-00090, 00091-00107, 00108-00112, 00131-00141, 00142-00146, 00147-00173, 00174-00176, 00177-00190, 00191-00211, 00212-00214, 00215-00216, 00235-00240, 00241-00242.

Although far from detailed and often repetitive, the Government's explanations for withholding Vaughn Index documents 00001-00057, 00062-00090, 00091-00107, 00131-00141, 00142-00146, 00147-00173, 00174-00176, 00177-00190, 00191-00211, 00212-00214, 00215-00216, and 00241-00242 under the work-product privilege is sufficient to discharge its evidentiary burden.  See Ellis, 110 F. Supp. 3d at 108.  First, the Government provides a description of the contents of the withheld documents, including the author and circumstance of the document's creation.  See, e.g., Vaughn Index at ECF p. 15 ("Emails between AUSAs regarding co-defendants and motions in opposition strategies").  Next, it clearly explains that the documents were created in connection with Plaintiff's criminal prosecution.  See, e.g., id. at ECF p. 16 (explaining that document was "prepared by an attorney in contemplation of litigation" against Plaintiff).

As mentioned above, the Court found the Government's explanation for withholding Vaughn Index documents 00108-00112 and 00235-00240 too vague.  After reviewing the documents *in camera*, however, it is clear that these are communications between Government attorneys detailing their litigation strategy in response to Plaintiff's appeal of his criminal conviction.  The documents were obviously "prepared or obtained because of the prospect of litigation," and thus were properly withheld under the work-product exemption.  Boehringer Ingelheim Pharms., 778 F.3d at 149 (quoting Deloitte LLP, 610 F.3d at 137).

### 2.  *External Documents*

The Government also withheld records that include communications between Government attorneys and law-enforcement personnel who were "involved . . . with Plaintiff's criminal investigation."  Griffin Decl., ¶ 25.  These documents contain discussions of the evidence used to prosecute Plaintiff and detail the "[attorneys'] legal strategies, reasoning, and

19

analysis related to Plaintiff's criminal case."  Id; see, e.g., Vaughn Index, Docs. 00058-00061, 00113-130, 00243-00245.

Here, too, the Government clears its evidentiary burden.  It describes the documents withheld by identifying both the author and the circumstances of creation.  See, e.g., Vaughn Index at ECF p. 3 ("Email correspondence from AUSA to FBI Agent and USMS subject (Telephone Evidence)").  It then provides a clear indication that the documents were prepared in connection with Plaintiff's criminal prosecution.  See, e.g., id. (explaining that document was "prepared in anticipation of litigation and contain the thoughts and impressions of an attorney").

In challenging the Government's withholdings, Plaintiff argues that it "misappl[ied] the attorney work product privilege" because the documents withheld post-date his guilty plea, which occurred in January 2017.  See Pl. Opp. & MSJ at 9.  While many of these documents do fall into this category, that matters little. Myriad proceedings occur in the typical criminal case between plea and termination, including sentencing and, at times, an appeal.  Here, as noted above, Plaintiff's criminal case was not closed until April 2020.  See Butt, Crim. A. No. 16-452. Indeed, the Government explains that after Plaintiff was convicted, "additional attorney work product was created," Def. Reply & Opp. at 16, "in preparation of the Plaintiff's criminal Appeal which was filed February 23, 2018."  Griffin Suppl. Decl., ¶ 16.  Plaintiff's contention, therefore, is unavailing.

In sum, the documents withheld by the Government are classic attorney work product. The disclosure of these records would risk putting DOJ lawyers' thought processes and strategy on public display. See Durrani v. DOJ, 607 F. Supp. 2d 77, 84 (D.D.C. 2009) (email between attorneys and drafts of indictment and prosecutorial memorandum covered by privilege); Government Accountability Project v. DOJ, 852 F. Supp. 2d 14, 26 (D.D.C.

2012) (DOJ properly withheld communications between Criminal Division attorney and her supervisor relating to whether DOJ should pursue prosecution); Miller v. DOJ, 562 F. Supp. 2d 82, 114–15 (D.D.C. 2008) (DOJ properly withheld documents "reflect[ing] such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to" defendant's criminal case) (citation omitted).

Plaintiff nevertheless urges the Court to determine "whether there are any segregable portions [of the withheld documents] that can be released." Pl. Opp. & MSJ at 10. Yet, in the FOIA context, "[i]f a document is fully protected as work product, then segregability is not required." Judicial Watch, Inc. v. DOJ, 432 F.3d 366, 371 (D.C. Cir. 2005); Citizens for Responsibility & Ethics in Washington v. DOJ, 48 F. Supp. 3d 40, 51 (D.D.C. 2014) (segregability analysis not required for documents protected by work-product privilege). The Court thus need not examine segregability here.

## IV.    Conclusion

For the aforementioned reasons, the Court will issue a contemporaneous Order granting Defendants' Motion for Summary Judgment, with the small exception discussed in Section III.A.3, *supra*.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  August 3, 2020